SMITH *v.* HARRISON *et al.*[1]

*(Circuit Court, E. D. Pennsylvania. May 31, 1892.)*

1. DEMURRAGE—"CUSTOMARY QUICK DISPATCH."
> Customary quick dispatch at the port of Philadelphia, in unloading a cargo of sugar, requires the use of platform scales to weigh the sugar, when the cargo is to be weighed as delivered.

2. SAME—DUTY OF CHARTERER.
> The duty to furnish scales adequate to give the degree of dispatch contracted for in the charter is incumbent on the charterer, although the weighing is done by the government.

Libel by George Smith, master of the vessel, against Harrison, Frazier & Co. to recover demurrage from unloading the cargo with "customary quick dispatch" according to the terms of the charter. Demurrage allowed.

*Curtis Tilton,* for libelant.

*Richard C. McMurtrie,* for respondents.

BUTLER, District Judge. The suit is brought to recover demurrage for delay in receiving a cargo of sugar at this port, under charter dated December 10, 1889, which provides that "the vessel shall be discharged with customary quick dispatch," and that "for every day's detention by respondents' fault £35 sterling shall be paid." It further provides that the discharge shall be at such wharf as the charterers designate. The vessel reached Philadelphia on Saturday, March 8, 1890, and after entry at the customhouse, reported readiness to discharge. On the following Monday the respondents ordered her to pier No. 38 South wharves, where she docked in the evening of that day. The stevedore (provided by respondents under the charter) was promptly ready, with gear erected to discharge from two hatches. There are no platform scales at this pier, and the sugar was consequently weighed on temporary scales set up, which required each bag to be separately put on and taken off. This method of weighing is inconvenient, awkward, and so slow that the sugar could not be taken as fast as put off from a single hatch, and consequently but one was used. The government requires such cargoes to be weighed before leaving the wharf; and they are usually weighed as taken from the vessel; though occasionally permission is obtained to deposit them on the wharf, in advance of weighing. This permission may always be had where the wharf is suitable for such deposit. The government is only interested to see that they are not removed from the wharf until the weight is ascertained. To authorize or justify such deposit, the wharf must be covered, (as this was,) and strong enough to support the weight. Formerly the usual method of weighing was that adopted in this instance. Within a few years past the large refineries have erected platform scales upon which carts and drays may be driven, and the sugar weighed as rapidly as it can be taken from two or more

---

[1] Reported by Mark Wilks Collet, Esq., of the Philadelphia bar.

hatches of the vessel. The principal part of the sugar brought to this port of recent years has been weighed on these scales,—whether unloaded there or at other wharves where such facilities do not exist. Brokers and others discharging elsewhere generally convey the sugar to these scales to avoid delay.. In the two years preceding the arrival of this cargo the respondents weighed 395 cargoes received by them on such scales, as against 22 cargoes weighed by the old method. The proofs justify a conclusion that of the cargoes brought here by others within the same period, about 700 were so weighed as against 18 weighed by the old method. It is, I think, justifiable to say that 19 out of 20 of the large cargoes coming here are weighed on platform scales. The government sets up temporary scales where no other method of weighing is provided by the importer. When platform scales are provided at the wharf where the sugar is unloaded, or at another to which it is conveyed for weighing, the government prefers to use them, as it thus saves much time to itself as well as to others.

In the view I entertain of the case, a more minute statement of the facts is unnecessary. As already seen, the charter requires "customary quick dispatch" in unloading. The signification of this language is well settled. It is the usual quick dispatch of the port where delivery is to be made, as distinguished from the common or usual dispatch employed there. It requires haste,—the ordinary haste of quick dispatch. The subject has been much discussed, and the following cases may be cited: *Carsanego* v. *Wheeler*, 16 Fed. Rep. 248; *Davis* v. *Pendergast*, 16 Blatchf. 567; *Keen* v. *Audenried*, 5 Ben. 535; *Williams* v. *Theobald*, 15 Fed. Rep. 469; *Lindsay* v. *Cusimano*, 10 Fed. Rep. 303; *Bjorquist* v. *Steel Rail Cross Ends*, 3 Fed. Rep. 718; *Davis* v. *Wallace*, 3 Cliff. 123; *Kearon* v. *Pearson*, 31 Law J. Exch. 1; *Dahl* v. *Nelson*, L. R. 6 App. Cas. 59; *Pyman* v. *Dreyfus*, 24 Q. B. Div. 157.

What customary dispatch in discharging cargoes of sugar requires—whether the use of modern conveniences for weighing—need not be considered. That customary *quick* dispatch does require the use of such conveniences, I cannot doubt. It is difficult to see how the dispatch can be hastened in any other way. Possibly it might by setting up several temporary scales, but this would require a large force of men, would occupy considerable space, and tend to embarrassment and confusion. It is not probable that the government would resort to this means for hastening the work. The only reasonably practicable method of securing haste is, as the expert witnesses say, by the employment of platform scales.

The dispatch stipulated for in the charter largely influences the freight-rate. "Customary quick dispatch" gives the charterer a lower rate than "customary dispatch," and I cannot doubt that when the respondents agreed to give the libelant such quick dispatch it was contemplated that the modern facilities for weighing should be employed. The specific governing object in providing such facilities is to save time, and thus discharge vessels speedily. Why then should not a vessel which has given the charterer the benefit of quick dispatch rates have the benefit of such

facilities? It may be said that it is the government's duty to furnish scales; that the charterer has nothing to do with the weighing. To a limited extent this is true; but his obligation requires him to take the cargo, as delivered from the ship, and if it is to be weighed as received, (to ascertain his obligations to the government,) instead of being deposited (wholly or in part) on the wharf, his duty requires him to see that such facilities for weighing are provided as will enable him to afford the dispatch which he has bound himself to give. The subject does not require extended discussion and I will not pursue it. I hold that the "customary quick dispatch" of this port, in the discharge of sugar, is such dispatch as can only be afforded by the use of platform scales in weighing, where the cargo is to be weighed as delivered; that the usual customary method of weighing, under the circumstances stated, is by the use of such scales, wherever haste is required. It follows that the libelant is entitled to demurrage. I will not undertake to determine how much; but will refer the question to a commissioner if the parties do not agree about it.